**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| DAVID JOHNSON )<br>)<br>Plaintiff, )<br>)<br>)<br>)<br>)<br>v. )<br>)<br>)<br>SERGEANT STEVEN KLIMEK, individually, )<br>DIRECTOR OSBORNE, individually, )<br>C/O GRIFFIN, individually, )<br>C/O SUK, individually, )<br>C/O KOTO, individually, )<br>C/O LYDAY, individually, )<br>SGT. RODGERS, individually, )<br>C/O BRYCE, individually, )<br>C/O STORCH, individually, )<br>C/O MCHUGH, individually, )<br>C/O LENOIR, individually, )<br>C/O SHAW, individually, )<br>C/O LOMBARDI, individually, )<br>C/O BOIKO, individually, )<br>C/O MAGRATE, individually, )<br>LT. WILLIAMS, individually, and )<br>SGT. VALENTINE, individually. )<br>)<br>Defendants. ) | Case No. 1:17-cv-08400<br>(Consolidated with Case Nos.<br>1:18-cv-06935 and 1:18-cv-07734)<br><br>Hon. Andrea R. Wood<br><br><br><br>**JURY TRIAL DEMANDED** |

**CONSOLIDATED AMENDED COMPLAINT**

NOW COMES Plaintiff David Johnson ("Plaintiff"), through their appointed counsel, and hereby complains against Defendants, Sgt. Klimek, Director Osborne, C/O Griffin, C/O Suk, C/O Koto, C/O Lyday, Sgt. Rodgers, C/O Lombardi, C/O Boiko, C/O Magrate, Lt. Williams and Sgt. Valentine, all in their individual capacities, (collectively "Defendants") as follows:

1

**NATURE OF THE CASE**

1. While confined as a pretrial detainee in Cook County Jail (the "CCJ") the Plaintiff was subjected to inhumane living conditions including: A) being exposed to constant threat of physical violence and death by another detainee of which Defendants were aware because Plaintiff informed them of the specific threat; B) suffering physical violence committed against him by another detainee, despite the Defendants being informed that the specific attacker posed an actual, imminent threat to Plaintiff; C) being forced to sleep on unsanitary and infested bedding material that was unfit for human uses and caused physical harm and illness to Plaintiff; and D) being held in unsanitary and unfit conditions of confinement while having all requests for any remedy being ignored or refused. Despite raising these issues to guards and other prison officials, no remedial actions were taken to protect the Plaintiff from attack or to remedy the unfit conditions of confinement.

2. Plaintiff brings this action under the Fourteenth and Eighth Amendments to the United States Constitution to remedy this treatment and request this Court to award compensatory and punitive damages for the harm suffered as a result of Defendants' failure to protect him from assault by another detainee and for his prolonged exposure to inhumane and squalid living conditions.

**JURISDICTION AND VENUE**

3. The jurisdiction of the Court is invoked pursuant to 28 U.S.C. § 1331 as this case arises under the Fourteenth and Eighth Amendments to the Constitution of the United States and 42 U.S.C. § 1983.

4. This Court has personal jurisdiction over Defendants because Defendants are residents of the State of Illinois.

5. Venue in the United States District Court for the Northern District of Illinois is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred at Cook County Jail, within this judicial district's borders.

**PARTIES**

6. Plaintiff David Johnson currently resides at the Menard Correctional Center and was a pretrial detainee in the CCJ during all relevant times of this Complaint until approximately December 2016, and thereafter was a post-trial detainee until his transfer into the custody of the Illinois Department of Corrections in 2019.

7. Defendant Sergeant Steven Klimek ("Klimek"), served as a corrections officer/guard at the CCJ during all or part of the time frame relevant to this Complaint and, as such, was responsible for the health and welfare of the inmates at the CCJ.

8. On information and belief, Defendant Osborne ("Osborne") served as a director, assistant director or in another position of authority at the Cook County Department of Corrections during all or part of the time frame relevant to this complaint and received at least two direct communication (one verbal, and one written at Defendant Osborne's invitation) from Plaintiff reporting that Plaintiff had been attacked by a detainee, that Plaintiff was receiving ongoing threats from the detainee, and that Plaintiff feared other imminent attacks and feared for his safety and well-being.

9. Defendant C/O Griffin ("Griffin"), served as a corrections officer/guard at the CCJ during all or part of the time frame relevant to this Complaint and, as such, was responsible for the health and welfare of the inmates at the CCJ.

10. Defendant C/O Suk ("Suk"), served as a corrections officer/guard at the CCJ during all or part of the time frame relevant to this Complaint and, as such, was responsible for the health and welfare of the inmates at the CCJ.

11. Defendant C/O Koto ("Koto"), served as a corrections officer/guard at the CCJ during all or part of the time frame relevant to this Complaint and, as such, was responsible for the health and welfare of the inmates at the CCJ.

12. Defendant C/O Lyday ("Lyday"), served as a corrections officer/guard at the CCJ during all or part of the time frame relevant to this Complaint and, as such, was responsible for the health and welfare of the inmates at the CCJ.

13. Defendant Sgt. Rodgers ("Rodgers"), served as a corrections officer/guard at the CCJ during all or part of the time frame relevant to this Complaint and, as such, was responsible for the health and welfare of the inmates at the CCJ.

14. Defendant C/O Storch ("Storch"), served as a corrections officer/guard at the CCJ during all or part of the time frame relevant to this Complaint and, as such, was responsible for the health and welfare of the inmates at the CCJ.

15. Defendant C/O McHugh ("Mchugh"), served as a corrections officer/guard at the CCJ during all or part of the time frame relevant to this Complaint and, as such, was responsible for the health and welfare of the inmates at the CCJ.

16. Defendant C/O Lenoir ("Lenoir"), served as a corrections officer/guard at the CCJ during all or part of the time frame relevant to this Complaint and, as such, was responsible for the health and welfare of the inmates at the CCJ.

17. Defendant C/O Shaw ("Shaw"), served as a corrections officer/guard at the CCJ during all or part of the time frame relevant to this Complaint and, as such, was responsible for the health and welfare of the inmates at the CCJ.

18. Defendant C/O Lombardi ("Lombardi"), served as a corrections officer/guard at the CCJ during all or part of the time frame relevant to this Complaint and, as such, was responsible for the health and welfare of the inmates at the CCJ.

19. Defendant C/O Boiko ("Boiko"), served as a corrections officer/guard at the CCJ during all or part of the time frame relevant to this Complaint and, as such, was responsible for the health and welfare of the inmates at the CCJ.

20. Defendant C/O Magrate ("Magrate"), served as a corrections officer/guard at the CCJ during all or part of the time frame relevant to this Complaint and, as such, was responsible for the health and welfare of the inmates at the CCJ.

21. Defendant Lt. Williams ("Williams"), served as a corrections officer/guard at the CCJ during all or part of the time frame relevant to this Complaint and, as such, was responsible for the health and welfare of the inmates at the CCJ.

22. Defendant Sgt. Valentine ("Valentine"), served as a corrections officer/guard at the CCJ during all or part of the time frame relevant to this Complaint and, as such, was responsible for the health and welfare of the inmates at the CCJ.

23. At all times relevant hereto, the Defendants were acting with the authority and color of state law, that is, under the Constitution, statutes, laws, rules, regulations, and customs of the United States, the State of Illinois and Cook County.

## **FACTS**

24. While incarcerated at CCJ, the Plaintiff began receiving threats of violence and death from another detainee, believed to be Charles Hall ("Hall"), beginning in or about January 2016. Hall purported to be a relative of a crime victim in an incident for which Plaintiff was being charged and held at the CCJ.

25. Plaintiff reported the ongoing threats of violence and death from Hall to several officers, including Defendant officers Koto, Griffin and Sgt. Klimek, and Plaintiff requested that he be kept separated from Hall. Plaintiff's reports and requests were ignored and waved away with words to the effect of "he can't get to you" because Hall was on a different tier at the CCJ.

26. Plaintiff continued to receive threats from Hall and to report them to Defendants. On or about November 28, 2016, Plaintiff was being transported to court for an appearance in his criminal case. Plaintiff observed that Hall was present in elevator in which Plaintiff was being transported and in the hallway. Plaintiff identified Hall to Defendant Klimek as the person that had been threatening him, and Plaintiff expressed to Defendant Klimek that he feared an imminent attack.

27. Defendant Klimek failed and refused to take any action to protect Plaintiff from attack, saying only words to the effect of "just get moving, we don't have all day."

28. Almost immediately thereafter, Plaintiff was physically and violently attacked by Hall. Plaintiff received substantial, painful and bloody injuries as a result of the attack, including a split lip, black eye and injuries to his nose.

29. After this first attack, Plaintiff continued to report threats of violence and death made to him by Hall, including to Defendants Griffin and Koto and Plaintiff again requested that he be at all times separated from Hall. Defendants Griffin and Koto were advised by Plaintiff of

the prior attack upon him committed by Hall. No action was taken, and Plaintiff's concerns were again dismissed with words to the effect of "you're in Division 9, you should be used to fighting."

30. Following the first attack, Plaintiff encountered Defendant Director Osborne in the CCJ while being transported to a visit Plaintiff was making to the Cermak medical facility. Plaintiff told Defendant Osborne that he had been attacked, that he was receiving ongoing threats of violence and death from a specific detainee, and that Plaintiff feared another attack. Defendant Osborne initially told Plaintiff that he should report his concerns up the chain of command at the CCJ, but upon being told by Plaintiff that Plaintiff had done so and no action had been taken, Defendant Osborne directed Plaintiff to write him a letter.

31. Plaintiff subsequently sent a letter to Defendant Osborne recounting the attack, the ongoing threats of violence and death from the specific detainee involved and Plaintiff's concern that he would be subject to further attacks. No action was taken in response to Plaintiff's letter to Director Osborne. Further, Plaintiff reported the same issues to his counselor, believed to be counselor Davis, and was told that he did not need to formally grieve the issue because it involved a matter of his immediate safety.

32. On or about August 25, 2017, Plaintiff was again being transported to court for an appearance in his criminal case. Plaintiff was restrained in a "blue box" device that kept his hands shackled at his waist such that Plaintiff would not be able to defend himself against another attack.

33. Plaintiff once again observed that Hall was present and that Hall was not as extensively restrained as Plaintiff. Despite Plaintiff's prior notifications of the threats to his safety, Plaintiff and Hall were being held, prior to court, in the same holding area. Plaintiff

7

reported to the officers present, including Defendant Klimek, that Hall was again present, had previously attacked him and that Plaintiff feared he again would be attacked by Hall. Plaintiff requested that Plaintiff and Hall be kept separated.

34. While in the holding area with Plaintiff, Hall made several attempts to get to and attack Plaintiff. Plaintiff advised Defendant Klimek and the other officers present, including Defendants Koto, Suk and Griffin, that Hall was trying to hit him. No action was taken, except the officers laughed and Defendant Klimek told Plaintiff to "stop playing."

35. Plaintiff was then again brutally attacked by Hall, who repeatedly hit Plaintiff with metal shackles until Hall was eventually pulled off of Plaintiff. Plaintiff suffered painful and possibly permanent injuries as a result of the attack, including injuries to his upper and lower back. Plaintiff's injuries were so severe that he urinated on himself.

36. Plaintiff's injuries were so severe that missed his scheduled court appearance and, after being held alone in a bullpen while in considerable pain for approximately 90 minutes, Plaintiff was transported to the Cermak medical unit for treatment. Plaintiff subsequently was told by doctors at Cermak that he likely would suffer back pain as a result of the attack for the rest of his life.

37. Defendants had notice of the specific threat posed by detainee Hall to Plaintiff, and had the ability to protect Plaintiff from the attacks by detainee Hall by either keeping Hall and Plaintiff separated or by adequately restraining Hall. Defendants, through deliberate indifference to the risk of harm or death posed to Plaintiff by Hall, failed to take any reasonable measures to protect Plaintiff from attack.

38. As a result of Defendants' failure to protect Plaintiff from unwarranted attacks of which they had notice, Plaintiff has suffered bodily harm and mental anguish.

39. While incarcerated at CCJ, Plaintiff initially was given a mattress with a plastic covering that was at least somewhat clean. On or about August 9, 2018, Plaintiff was temporarily transferred to the segregation unit in Tier 1-G. On information and belief, the ordinary practice is for Plaintiff's property, including the mattress that he had been using, to be transferred to his cell in segregation.

40. Contrary to this practice, when Plaintiff was delivered his property, the mattress he had been using was taken away. Plaintiff was instead given a piece of cloth or cotton bedding about a half inch think, without any cover. This "mattress" was covered in stains, believed to include fecal matter and urine, sticky to the touch, and smelled like urine. The mattress was unhygienic and not fit for human use.

41. Plaintiff promptly informed Defendant Lyday that the bedding material was not fit for use, that it was stained with fecal matter and urine, and requested his old mattress or another mattress suitable for use. Defendant Lyday refused Plaintiff's request and told him to cover his nose.

42. While in segregation, on or about August 12, 2018, Plaintiff reported to Defendant Rodgers that the bedding material was covered in fecal matter and urine and not fit for use and requested his old mattress or another mattress suitable for use. Defendant Rodgers refused Plaintiff's request and told him to "stop crying like a baby, and man up."

43. Plaintiff's old mattress was not returned to him after his stay in segregation, and after returning to his regular tier he was again given the same piece of cloth or cotton bedding (which was not a mattress) that had been given to him in segregation.

44. On information and belief, the unsuitable bedding also was infested with crab lice and ringworm, and Plaintiff suffered physical harm and mental anguish from the resulting infestation of lice and ringworm caused by continued exposure to the bedding.

45. During his time in segregation of approximately ten days and subsequently, Plaintiff repeatedly advised Defendants Bryce, Lyday, Storch, McHugh, Lenoir, Shaw and Rodgers that the bedding was covered in fecal matter and urine, that it was unhygienic, infested, and not suitable for use, and that continued exposure to the bedding was making Plaintiff physically ill to the point of vomiting. Plaintiff asked each Defendant to provide him with a suitable mattress, but all such requests were ignored and/or denied. The unsuitable bedding also exacerbated Plaintiff's back problems that had resulted from the injuries he sustained in the preventable attacks on him by another detainee as described herein.

46. On information and belief, each of the Defendants had the ability to remedy the situation by causing Plaintiff to be provided with a suitable mattress, and such mattresses were readily available to Defendants to give to Plaintiff.

47. While incarcerated at the CCJ, Plaintiff was regularly kept in cells whose conditions were unsanitary and harmful to Plaintiff's health. Plaintiff made many requests for his cell to be washed, power washed, sanitized, and/or for Plaintiff to be given materials with which to remedy the unsanitary conditions. All of Plaintiff's requests were ignored or denied.

48. For example, while housed in Tier 2C in Division 9 during 2018, Plaintiff's cell was unsanitary and unfit for human habitation. The walls and toilet of the cell contained extensive mold or fungus, which Plaintiff was forced to continually breathe. The toilet and areas around it appeared to be stained with feces and urine and mold was present.

49. Over a period of more than 90 days, Plaintiff made repeated requests to Defendants Lombardi, Boiko, Magrate, Jensen, Williams and Valentine for cleaning supplies (or if not provided directly, spraying of his cell with disinfect cleaners or power washing), or for the unsanitary and uninhabitable nature of the cell to be otherwise remedied.

50. The other cells in which Plaintiff was held while incarcerated at the CCJ were in substantially the same unsanitary condition. The conditions in the cells in which Plaintiff was held at the CCJ made him physically ill to the point of vomiting.

51. Plaintiff reported the unsanitary condition of his cells, the resulting physical illness being caused by the conditions, and made requests for remedial action to each of Defendants Lombardi, Boiko, Magrate, Jensen, Williams, and Valentine.

52. On information and belief, each of the Defendants had the ability to remedy the situation by requesting a work order for Plaintiff's cell to be cleaned, by causing cleaning materials to be provided (or if not provided directly, sprayed onto the floor, walls and other surfaces of the cell for Plaintiff to clean) or by taking other remedial action.

53. Plaintiff initiated numerous grievances related to the conditions of confinement, all of which were ignored, denied, and/or failed to result in any reasonable effort to remediate the unfit conditions of Plaintiff's confinement.

54. Each Defendant acted with deliberate indifference and ignored or denied Plaintiff's requests.

55. Plaintiff suffered physical harm, illness and mental anguish as a result of the conditions of his confinement with respect to the inadequate, unsanitary mattress that was unfit for use and the unsanitary and unfit for habitation conditions of the cells in which he was confined.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

56. Plaintiff has exhausted his administrative remedies and/or has been excused from doing so.

**COUNT I – VIOLATION OF PLAINTIFF'S DUE PROCESS RIGHTS UNDER THE FOURTEENTH AMENDMENT – FAILURE TO PROTECT**

**(Against Defendants Klimek, Osborne, Griffin, Suk and Koto)**

57. Plaintiff realleges and incorporates by reference paragraphs 1 through 38 and paragraph 56, inclusive, as paragraph 57 of this Count I as though fully set forth herein.

58. Pursuant to the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States, pretrial detainees are entitled to humane conditions of confinement, including a safe living environment free of threats and physical violence.

59. The failure of Defendants to take reasonable available measures to protect Plaintiff from attack and to provide a safe living environment constitutes an extreme deprivation that violates current standards of decency.

60. By failing to act, Defendants acted with reckless disregard toward the health and well-being of Plaintiffs.

61. By failing to act, Defendants acted with deliberate indifference towards the health and well-being of Plaintiff.

62. Plaintiff claims damages for the injuries set forth above under 42 U.S.C. § 1983 against Defendants for violation of Plaintiff's constitutional rights under color of law.

## COUNT II– VIOLATION OF PLAINTIFF'S RIGHTS UNDER THE EIGHTH AMENDMENT – FAILURE TO PROTECT

### (Against Defendants Klimek, Osborne, Griffin, Suk and Koto)

63. Plaintiff realleges and incorporate by reference paragraphs 1 through 38 and paragraph 56, inclusive, as paragraph 63 of this Count II as though fully set forth herein.

64. Pursuant to the Eighth Amendment to the Constitution of the United States, prisoners are entitled to humane conditions of confinement, including a safe living environment free of threats and physical violence.

65. The failure of Defendants to take reasonable available measures to protect Plaintiff from attack and to provide a safe living environment constitutes an extreme deprivation that violates current standards of decency.

66. By failing to act, Defendants acted with reckless disregard toward the health and well-being of Plaintiffs.

67. By failing to act, Defendants acted with deliberate indifference towards the health and well-being of Plaintiff.

68. Plaintiff claims damages for the injuries set forth above under 42 U.S.C. § 1983 against Defendants for violation of Plaintiff's constitutional rights under color of law.

## COUNT III – VIOLATION OF PLAINTIFF'S DUE PROCESS RIGHTS UNDER THE FOURTEENTH AMENDMENT – CONDITIONS OF CONFINEMENT

### (Against Defendants Lyday, Rodgers, Bryce, Storch, McHugh, Lenoir, Shaw, Lombardi, Boiko, Williams, Magrate and Valentine)

69. Plaintiff realleges and incorporates by reference paragraphs 1 through 23 and paragraphs 39-56, inclusive, as paragraph 69 of this Count III as though fully set forth herein.

70. Pursuant to the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States, pretrial detainees are entitled to humane conditions of confinement, including clean living environments. The failure of Defendants to provide a clean living environment throughout the extended periods of Plaintiff's detention constitutes an extreme deprivation that violates current standards of decency.

71. The problems with the squalid conditions were prolonged, systemic in nature, and widely known by Defendants while working at CCJ.

72. Defendants were directly informed by Plaintiff of the unfit conditions of Plaintiff's confinement and its effects on Plaintiff.

73. By failing to act, Defendants acted with reckless disregard toward the health and well-being of Plaintiff.

74. All Defendants were deliberately indifferent to the Plaintiffs' Fourteenth Amendment right to clean living conditions when they failed to take steps to correct the filthy conditions.

75. Plaintiff claims damages for the injuries set forth above under 42 U.S.C. § 1983 against Defendants for violation of Plaintiff's constitutional rights under color of law.

### COUNT IV– VIOLATION OF PLAINTIFF'S RIGHTS UNDER THE EIGHTH AMENDMENT – CONDITIONS OF CONFINEMENT

**(Against Defendants Lyday, Rodgers, Bryce, Storch, McHugh, Lenoir, Shaw, Lombardi, Boiko, Williams, Magrate and Valentine)**

76. Plaintiff realleges and incorporates by reference paragraphs 1 through 23 and paragraphs 39-56, inclusive, as paragraph 76 of this Count IV as though fully set forth herein.

77. Pursuant to the Eighth Amendment to the Constitution of the United States, prisoners are entitled to humane conditions of confinement, including clean living environments.

The failure of Defendants to provide a clean living environment throughout the extended periods of Plaintiff's detention constitutes an extreme deprivation that violates current standards of decency.

78. The problems with the squalid conditions were prolonged, systemic in nature, and widely known by Defendants while working at CCJ.

79. Defendants were directly informed by Plaintiff of the unfit conditions of Plaintiff's confinement and its effects on Plaintiff.

80. By failing to act, Defendants acted with reckless disregard toward the health and well-being of Plaintiff.

81. Defendants were deliberately indifferent to the Plaintiffs' Fourteenth Amendment right to clean living conditions when they failed to take steps to correct the filthy conditions.

82. Plaintiff claims damages for the injuries set forth above under 42 U.S.C. § 1983 against Defendants for violation of Plaintiff's constitutional rights under color of law.

WHEREFORE, Plaintiff respectfully request that this Honorable Court grant Plaintiff the following relief:

    A. Award compensatory damages to Plaintiff against Defendants in an amount to be proven at trial;

    B. Award punitive damages to Plaintiff against Defendants;

    C. Award reasonable attorneys' fees and costs to Plaintiff;

      D.    Award to Plaintiff such other and further relief as this Honorable Court may deem just and appropriate.

Dated:    April 30, 2019               Respectfully submitted,

                                                    DAVID JOHNSON

                                                    By: /s/ Andrew A. Jacobson
                                                    One of Plaintiff's Attorneys

Glenn L. Udell (ARDC#6206064)
Andrew A. Jacobson (ARDC#6211224)
Brown, Udell, Pomerantz & Delrahim, Ltd.
225 West Illinois Street, Suite 300
Chicago, Illinois 60654
Tel. (312) 475.9900 / Fax (312) 475-1188
gudell@bupdlaw.com
ajacobson@bupdlaw.com